[Civ. No. 10443. Fourth Dist., Div. Two. June 23, 1971.]

DAVID MICHAEL HORACK et al., Plaintiffs and Respondents, v. FRANCHISE TAX BOARD, Defendant and Appellant.

**COUNSEL**

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Neal J. Gobar, Mark W. Jordan and Philip C. Griffin, Deputy Attorneys General, for Defendant and Appellant.

Herbert M. Porter for Plaintiffs and Respondents.

**OPINION**

**GARDNER, P. J.**—This is an appeal from an order granting a petition for writ of mandate in which the trial court ordered the Franchise Tax Board to return to petitioners certain monies which had come into their possession by reason of the arrest of petitioners on a narcotics offense.

The facts of the case are as follows: A neighbor called the police and advised that three "hippie type" persons had entered what she believed to be a vacant residence next door. The police first went to the home of the neighbor-informant, but found that she had departed. The officers then

went to the house in question, and, by looking through the windows, saw that it was unfurnished except for a large stereo unit which was playing. The police knocked, identified themselves and entered through an unlocked door, guns drawn, looking for the persons who had reportedly entered the house. They found no occupants but did find two pounds of marijuana and one pound of hashish, together with $12,000 in cash. It was the opinion of the officers that the quantities of narcotics were such that they were possessed for sale. Thereafter, the three occupants of the house were arrested for possession of the narcotics. The trial court granted a motion to dismiss under Penal Code section 995, as to the occupants Turkington and McCurdy, petitioners and respondents herein, but denied it as to the occupant Horack, the third petitioner and respondent. The Supreme Court reversed the trial court's decision, holding that the entry of the officers was without reasonable or probable cause. (*Horack* v. *Superior Court,* 3 Cal.3d 720 [91 Cal.Rptr. 569, 478 P.2d 1].)

In the meantime the police had notified the Franchise Tax Board of the situation and that board concluded that the three occupants of the house, petitioners below, respondents herein, had income which they had failed to report and based on the information available to it, issued a jeopardy assessment for personal income tax after making a finding that the collection of the tax on said income would be jeopardized by delay. (Rev. & Tax. Code, § 18641 et seq.) As a result of the jeopardy assessment, the Board issued three orders to withhold pursuant to Revenue and Taxation Code section 18807, directing the police to turn the money over to it. The police complied with these orders.

Petitioners filed written protests with the Franchise Tax Board pursuant to Revenue and Taxation Code section 18643 et seq. These administrative procedures are still pending.

Subsequent to the filing of the petition for reassessment, petitioners filed a petition for writ of mandate against the board in the superior court, seeking to compel the return of these funds. The superior court granted the petition and directed the board to turn the money over to the petitioners and their attorney. The board appeals from this order.

In this appeal, the appellant's contentions resolve themselves into two: that the trial court erred in issuing the writ of mandate because (1) the petitioners failed to exhaust their administrative remedies before the Franchise Tax Board; (2) the California Constitution and the Revenue and Taxation Code prohibit the use of mandate to enjoin the collection of personal income taxes.

Respondents filed an emotion-choked brief charging "unmitigated rob-

bery" and "outrageous conduct" on the part of the state; a "conspiracy" between the police and the board; "outrageously unconstitutional and totalitarian behavior by State officials;" that "the conduct of the State in this matter is so utterly contemptible and so totally repugnant to every principle that this country stands for" as to merit no argument; and that the contentions of the appellant are "fantastic, absurd and patently illegal." They advise that they cannot "cite numerous cases in support of their position, but would cite the Declaration of Independence and the Constitution of the United States in toto."

Stripped of hyperbole, we gather their contentions to be (1) that this was not a jeopardy assessment but a plain theft of the money and, therefore, that there was no occasion to exhaust administrative remedies, and (2) since the money was taken as the result of an illegal seizure it cannot be the subject of a jeopardy assessment.

■ Initially, we would observe that the Revenue and Taxation Code sets up a complete and exhaustive system for the litigation and resolution of tax disputes. Among the many provisions is authority for "jeopardy assessments" (Rev. & Tax. Code, § 18641) which have been held to be lawfully authorized collection devices satisfying the due process clause as to their constitutionality. (*People* v. *Skinner,* 18 Cal.2d 349 [115 P.2d 488, 149 A.L.R. 299]; *People* v. *Sonleitner,* 185 Cal.App.2d 350 [8 Cal.Rptr. 528].) In short, when facts are brought to the attention of the board which indicate that there may be an outstanding liability for income taxes and time is deemed to be of the essence as to the collection of that tax, the board may make an assessment of the facts then available to it and immediately commence collection procedures. Here, the board became aware that the petitioners had a large enough amount of narcotics in their possession to raise an inference that commercial sales had taken place. This finding was buttressed by the large amount of money discovered with the narcotics. Based on a review of the evidence before it, the board was justified in concluding that petitioners had not declared any income derived from the sale of this contraband or paid any tax thereon. These facts justified the board in making the jeopardy assessment. (Rev. & Tax. Code, § 18648.) The board was then empowered to immediately commence collection proceedings. (Rev. & Tax. Code, § 18643.)

I.

## PETITIONERS HAVE FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

■ It is conceded that petitioners had and have proper and lawful administrative remedies under the Revenue and Taxation Code to secure

the return of the funds if it is determined that the jeopardy assessments were improper. Any taxpayer against whom a jeopardy assessment has been levied, and who wishes to challenge the propriety thereof, may file a petition for reassessment before the Franchise Tax Board. (Rev. & Tax Code, § 18643.) If unsatisfied with the action of the Franchise Tax Board on the petition for rehearing, the taxpayer may seek further review by the State Board of Equalization. (Rev. & Tax. Code, §§ 18646, 18593, 18594.) A rehearing of the determination of that board may also be sought. (Rev. & Tax. Code, § 18596.) In fact, petitioners have availed themselves of these administrative remedies, though they had not exhausted them at the time they sought relief from the court.

■ When administrative machinery exists for the resolution of differences, the courts will not act until such administrative procedures are fully utilized and exhausted. To do so would be in excess of their jurisdiction. (*Aronoff* v. *Franchise Tax Board,* 60 Cal.2d 177 [32 Cal.Rptr. 1, 383 P.2d 409]; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]; *Noonan* v. *Green,* 276 Cal.App.2d 25 [80 Cal.Rptr. 513]; *Brenkwitz* v. *City of Santa Cruz,* 272 Cal.App.2d 812 [77 Cal.Rptr. 705].) ■ In the instant case, petitioners have instituted proceedings to pursue their administrative remedies. However, they had not exhausted such remedies at the time they sought relief from the court. Thus, the conclusion that the court below was acting in excess of its jurisdiction in granting the petition for writ of mandate is inescapable.

■ Petitioners seek to avert this conclusion by means of the assertion that since the $12,000 was taken as the result of an illegal search and seizure, the state may not take cognizance of the existence of this fund for any purpose. Thus, it may not be the subject of a jeopardy assessment, as a matter of law, and petitioners are relieved from their obligation to pursue their administrative remedy.

It has now been judicially determined that the $12,000 fund was obtained by the police as the result of an illegal search and seizure. (*Horack* v. *Superior Court, supra,* 3 Cal.3d 720.) This ruling renders the money inadmissible as evidence against the petitioners in a criminal prosecution. However, we do not believe that this consequence, standing alone, deprives the taxing authority of the state of the ability to take cognizance of the existence of the fund and to move against it to satisfy unpaid income taxes. Respondents have not seen fit to research this problem, aside from their reliance on the Bill of Rights and the Constitution "in toto." However, with the assistance of the Attorney General, we have attempted to explore the law on this subject. We have found no California authority passing on this

precise problem. However, a number of federal cases dealing with the application of the Fourth Amendment to the Internal Revenue Code are directly in point. Since the Internal Revenue Code and California Personal Income Tax Law are substantially similar in this respect, and inasmuch as the constitutional standards applicable to the federal government under the Fourth Amendment and to the state governments under the Fourth and Fourteenth Amendments are identical, we find the analysis of these cases persuasive authority.

In *Field* v. *United States* (5th Cir. 1959) 263 F.2d 758, certiorari denied 360 U.S. 918 [3 L.Ed.2d 1534, 79 S.Ct. 1436], federal agents acting pursuant to a warrant conducted a raid on an apartment house and found evidence of violation of the Federal Wagering Excise Tax Law. During the course of the raid, defendant was arrested by a federal agent outside the apartment house, and a fund of money seized from his person. The arrest and subsequent seizure were found to be violative of defendant's Fourth Amendment rights. However, the Internal Revenue Service levied a jeopardy assessment against the money which had been seized. Defendant sought an order requiring the return of the funds to him, which order was denied by the federal district court. Initially, the Court of Appeal determined that the exclusionary rule, then simply a rule of evidence employed by the federal judiciary, did not require the return of the funds to defendant. Neither had prior case law fashioned a rule requiring the return of property obtained through an illegal search and seizure. And finally the court held that the Fourth Amendment did not mandate the creation of such a rule. The opinion reasoned that if the money had been turned back to defendant by the law enforcement authorities, it would have been subject to immediate levy in the defendant's hands. The mere fact that it had once been the subject of an illegal seizure did not permanently insulate the funds from the attention of the taxing authorities. Since the money was a proper object of attention by the Internal Revenue Service as soon as it had been returned to defendant, the court found no reason why the service could not move against it while in the hands of the law enforcement officials. The opinion of, the court in *Welsh* v. *United States* (1955) 220 F.2d 200 [95 App.D.C. 93], is to the same effect. No evidence was presented from which one could reasonably infer that in the instant case, the law enforcement authorities seized the petitioner's funds at the behest of the Franchise Tax Board. We are not unaware of the possibility of this form of abuse. But there is time enough to deal with this problem when it arises. (*Welsh* v. *United States, supra.*) We find the reasoning of the above cited opinions to be persuasive, and hold that the Fourth and Fourteenth Amendments do not require the return of the fruits of illegal searches and seizures to those from whom they were taken in the face of a valid claim by a taxing authority.

## II.

THE CALIFORNIA CONSTITUTION AND THE REVENUE AND TAXATION
CODE PROHIBIT THE USE OF MANDATE TO ENJOIN THE COLLECTION
OF PERSONAL INCOME TAXES

■ California Constitution, article XIII, section 15 states:

"No injunction or writ of mandate or other legal or equitable process shall ever issue in any suit, action or proceeding in any court against this State, or any officer thereof, to prevent or enjoin the collection of any tax levied under the provisions of this article. . . ."

Revenue and Taxation Code, section 19081, provides: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of this State to prevent or enjoin the assessment or collection of any tax under [the Income Tax Law]. . . ."

These provisions have been approved by the Supreme Court in the case of *Aronoff* v. *Franchise Tax Board, supra,* 60 Cal.2d 177, which held that the due process clause does not guarantee the right to judicial review of tax liability prior to payment. Thus, the action of the court below in granting petitioners' application for a writ of mandate was erroneous for this additional reason.

■ As was noted by the Supreme Court in its opinion in *Aronoff* v. *Franchise Tax Board, supra,* the Revenue and Taxation Code does not provide for the judicial review of a tax assessment prior to the collection of the tax. A suit to recover alleged overpayments is the exclusive means of obtaining judicial review of tax proceedings. Petitioners contend that a scheme of tax assessment providing for judicial review only at this juncture is unconstitutional, citing as authority *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]. We do not agree.

In its opinion, the Supreme Court forbade the summary levy for debt against wages only; the rationale employed by the court in reaching its result is not applicable to other forms of assets. (See *Western Bd. of Adjusters, Inc.* v. *Covina Pub., Inc.,* 9 Cal.App.3d 659 [88 Cal.Rptr. 293].) Moreover, the opinion in *Sniadach* v. *Family Finance Corp., supra,* notes that summary collection procedures may be permissible even against wages in extraordinary circumstances not specified in the opinion. In the instant case, there has been no assertion made to the effect that the funds against

which the Franchise Tax Board levied were wages. Even if there were such an assertion, we note that the Franchise Tax Board has determined that a jeopardy assessment against the funds was necessary to insure the payment of the taxes due. We suggest, without deciding, that a tax assessment against funds reasonably believed to be the fruits of illegal activity may be permissible under the rule of *Sniadach* as a summary proceeding made under special circumstances.

Order granting petition for writ of mandate reversed.

Gabbert, J., concurred.

**TAMURA, J.**—I concur in the judgment of reversal on the ground the use of mandate to recover taxes allegedly illegally assessed or collected is proscribed by article XIII, section 15, of the Constitution and section 19081 of the Revenue and Taxation Code.

Respondents' petition for a hearing by the Supreme Court was denied August 18, 1971.